# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| YOUSIF PIRA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 09 C 476 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | Wayne R. Andersen |
| Respondent. | ) | District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the petition of Yousif Pira ("Pira"), as a prisoner in federal custody, for a writ of habeas corpus to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the petition is denied.

## BACKGROUND

On November 22, 2002, Judge Sidney Schenkier approved a criminal complaint that charged Pira with access device fraud in violation of 18 U.S.C. § 1029(a)(3). The allegations in the complaint against Pira stemmed from various unauthorized access devices that were found in Pira's home during the execution of a search warrant. On January 23, 2003, Pira was indicted by a federal grand jury. The indictment charged Pira with four counts relating to unauthorized access devices. On that same date, Pira's co-defendant Zach Costinos ("Costinos") was indicated on three counts of bank fraud in violation of 18 U.S.C. § 1344 in case 02 CR 1052. The charges against Costinos stemmed from a series of checks that Pira and Costinos had presented or caused to be presented to various financial institutions. Both cases were assigned to this court.

On December 15, 2003, a jury trial commenced on the four counts against Pira. However, on the following day, prior to examination of the first witness, Pira, represented by his attorney, Scott J. Frankel ("Frankel"), pled guilty to all four counts. During the plea colloquy Pira admitted that he violated the statutes cited in each of the four counts and that he made the decision to plead guilty voluntarily.

Pira's sentencing hearing was originally set for March 25, 2004, but was continued several times at the request of the parties. On April 15, 2005, prior to the sentencing hearing, Pira filed a motion to withdraw his guilty plea (the motion is part of the record as Document No. 62 in case 02 CR 1052). The basis for Pira's motion was his claim that the government failed to produce reports and recordings relating to Pira's cooperation with the United States Secret Service during the summer of 2002. Pira claimed that these materials constituted *Brady* material and that his guilty plea should be vacated for the government's alleged failure to turn the materials over. The government responded with a memorandum and an affidavit from Special Agent Michael Bush of the Secret Service. Agent Bush's affidavit indicated that Pira participated in two controlled transactions for the Secret Service in August 2002 and that Pira was paid for his cooperation, but was not satisfied with the amount. Bush affidavit ¶¶ 4-12. The affidavit also stated that all of the reports regarding Pira's cooperation had been provided to the government prior to the trial, and that Agent Bush had personally assisted the government in faxing those reports to Frankel prior to trial. Bush affidavit ¶¶ 15-16. On June 2, 2005, we denied Pira's motion to withdraw his guilty plea.

On that same date Pira requested that the court appoint new counsel. We granted Pira's request and Steven Hunter ("Hunter") replaced Frankel as Pira's counsel. Hunter then filed a

successive motion to withdraw Pira's guilty plea on behalf of Pira based upon the same alleged *Brady* violation. We denied his motion on September 19, 2005 (reflected as Document No. 73 in case 02 CR 1052).

Pira's sentencing hearing began on July 19, 2006, at which time several witnesses were presented and the court heard evidence and argument regarding the proposed guideline calculations set forth in the Presentence Investigation Report ("PSI"). Throughout the course of the hearing Pira's counsel questioned several of the witnesses extensively regarding the nature of Pira's cooperation with the Secret Service. Both Agent Bush and Agent Matthew McCloskey of the Secret Service testified that Pira's cooperation was limited to the August 2002 transactions and that Pira was not authorized to have any of the access devices at issue in the case. Transcript of Sentencing Hearing at 67, 72-74, 102-03 (July 19, 2006); Transcript of Sentencing Hearing at 193-222, 313-322 (July 24, 2006).

At the sentencing hearing Pira also raised the *Brady* evidentiary issue that was the subject of his motions to withdraw his guilty plea. Pira asserted that there were videotapes depicting his debriefings at the offices of the Secret Service during the course of his cooperation and that those tapes proved that he was acting as an agent of the government at the time of the criminal conduct at issue. The Court questioned Agent Bush about these alleged recordings, and Agent Bush testified that all information related to Pira's cooperation with the Secret Service had been turned over to the government. Transcript of Sentencing Hearing at 5-6 (July 19, 2006). The government then represented to this court that all of that information had, in turn, been turned over to Pira's counsel. *Id.* at 7. Finally, Agent Bush testified that it was the Secret Service's

policy not to record interviews and, therefore, any allegations by Pira of recorded debriefings by the Secret Service must be false. *Id.* at 8-11.

On November 15, 2006, this court sentenced Pira to 78 months imprisonment, which fell at the low-end of the advisory guideline range of 78 to 87 months. Judgment was entered on December 12, 2006.

On December 13, 2006, Pira filed a timely notice of appeal. Hunter then filed a brief before the Seventh Circuit raising issues related to Pira's sentence. However, Pira then filed a *pro se* motion to dismiss Hunter and "dispose" of the motion that Hunter had filed on his behalf on May 3, 2007. Pira claims that he did so because the brief filed by Hunter did not raise all of the issues Pira wished to raise on appeal. Pet. at 11. The Seventh Circuit denied Pira's motion. On June 25, 2007, Pira filed a *pro se* motion for leave to file a supplemental brief. The brief raised several issues, including the alleged *Brady* violation. The Seventh Circuit also denied that motion. On July 31, 2008, the Court of Appeals affirmed this court's sentence.

Pira filed the instant petition for habeas corpus on January 26, 2009. In his petition Pira claims that he is entitled to relief for six reasons. Specifically, Pira alleges: (1) his trial counsel, Frankel, provided him with ineffective assistance, (2) the government committed a *Brady* violation by failing to produce reports and recordings related to his cooperation with the Secret Service, (3) the government withheld exculpatory evidence from him, (4) his counsel at sentencing and on appeal, Hunter, provided him with ineffective assistance, (5) the Seventh Circuit violated his rights by denying his motions and forcing him to accept Hunter as his attorney; (6) his Fourth Amendment rights were violated in obtaining and executing the search warrant, his Fifth Amendment rights were violated because of the deprivation of liberty, and his

4

Sixth Amendment rights were violated because of the ineffectiveness of both Frankel and Hunter. Based on these allegations, Pira requests that the court vacate, set aside or correct his sentence.

## LEGAL STANDARD

The federal habeas corpus statute, 28 U.S.C. § 2255, provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

The court should grant a hearing on the issues raised in the petition unless the respondent demonstrates conclusively that the petitioner is not entitled to any form of relief. 28 U.S.C. § 2255. The court must grant a hearing if the habeas petition "alleges facts that, if proven, would entitle" the petitioner to relief. *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (citing *Pittman v. Warden, Pontiac Correctional Ctr.*, 960 F.2d 688, 691 (7th Cir. 1992)). The petitioner must make specific, detailed allegations in order to qualify for a hearing; conclusory statements are insufficient. *See Daniels v. United States*, 54 F.3d 290, 293-94 (7th Cir. 1995). Petitions filed by *pro se* petitioners will be held to a more liberal standard than those filed by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even under this more liberal standard, however, no hearing is required if the record conclusively demonstrates that the petitioner is not entitled to any form of relief. *Daniels*, 54 F.3d at 293.

## DISCUSSION

## I.  Counts I, IV and VI: Ineffective Assistance of Counsel

In Count I Pira claims that he is entitled to relief due to the alleged ineffectiveness of his trial counsel, Frankel. Count IV claims that Pira's appellate and sentencing counsel, Hunter, was ineffective. Finally, Count V alleges that his Sixth Amendment rights were violated based upon the ineffectiveness of both Frankel and Hunter. Ineffective assistance of counsel claims are examined under the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). This general test focuses on "the legal profession's maintenance of standards" rather than a critique of counsel's performance. *Id.* at 688. The petitioner must meet both prongs of the *Strickland* test or the claim fails. *Id.* at 687.

The first prong, the performance prong, examines whether counsel's defense meets the standard of "reasonably effective assistance." *Id.* To satisfy this prong, the petitioner must affirmatively demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court is to give a high level of deference to counsel because it is all too easy in hindsight, after the petitioner has lost his case, to find that counsel's lack of success fell below the level of representation required by counsel to provide. *Id.* at 689. The petitioner must provide clear evidence, in the form of specific acts or omissions, to overcome this presumption. *Id.* at 689-90. The court must view the facts that the petitioner presents from the perspective of counsel at the time of the conduct alleged to be inadequate. *Id.* at 689.

The second prong, the prejudice prong, examines whether counsel's act or omission had an adverse effect on the defense. *Id.* at 692. This prong protects against the situation where counsel may have acted unreasonably but the unreasonable act or omission did not prejudice the

6

petitioner's defense. *Id.* at 691-92. To satisfy this prong, the petitioner must affirmatively demonstrate the prejudice that resulted, and must further demonstrate that there is a "reasonable probability" that his attorney's acts or omissions affected the outcome. *Id.* at 693-94. The court should make this determination in light of the totality of the evidence. *Id.* at 695.

### A. Count I: Trial Counsel

Pira claims that he received ineffective assistance of counsel from his trial counsel, Frankel, because Frankel failed to file any pretrial motions and to obtain evidence related to his cooperation with the Secret Service. However, Pira fails to meet the *Strickland* test with respect to Frankel. First, Pira fails to establish that Frankel's actions "fell below an objective standard of reasonableness." *Id.* at 688. We find no indication that the filing of any pretrial motions was warranted. For example, the record does not support any allegation that the search of Pira's home, executed purusuant to a search warrant issued by Judge Schenkier, was improper or that any of Pira's statements were obtained in violation of his *Miranda* rights. Attorneys often make strategic decisions to forego certain arguments in favor of others and we will not second guess Frankel's decision in this matter, especially given the lack of any indication that a pretrial motion would have been meritorious.

Additionally, Pira's allegation that Frankel failed to obtain evidence related to his cooperation with the Secret Service is not supported by the record. During Pira's change of plea hearing Frankel demonstrated that he was familiar with Pira' cooperation with the Secret Service during the summer of 2002. Transcript of Hearing at 8-10 (December 16, 2003). However, Frankel apparently concluded that the cooperation was relevant as a mitigating factor at sentencing, but did not exonerate Pira of his criminal conduct. Based upon the extent of Pira's

cooperation, as described in Agent Bush's affidavit and testimony at the sentencing hearing, we agree with Frankel's conclusion and find his decision to be reasonable. Accordingly, Pira's claims fail to satisfy the performance prong of the *Strickland* test with respect to Frankel's representation, and he is not entitled to habeas relief on Count I.

### B. Count IV: Sentencing and Appellate Counsel

Pira also claims that he received ineffective assistance from Hunter, his attorney at sentencing and appeal. Pira makes several allegations with respect to Hunter's representation: 1) Hunter failed to argue that a $1,000,000 check found on Pira's computer was generated as part of Pira's cooperation with the Secret Service, 2) Hunter failed to raise the *Brady* related issues on appeal, and 3) Hunter incorrectly stated in his brief to the Seventh Circuit that Pira had received a four level leadership role enhancement, when in fact Pira only received a two level enhancement for his role as a "manager." Pira's allegations are without merit.

First, Pira's allegation regarding the $1,000,000 check is contradicted by the record. The initial portion of Hunter's presentation during Pira's direct examination at the sentencing hearing was related to Pira's claim that he produced the $1,000,000 check found on his computer as part of his cooperation. Transcript of Sentencing Hearing at 227 (July 24, 2006). In the face of contrary evidence and testimony regarding the extent and time frame of Pira's cooperation, this court did not find this testimony credible, but this does not mean that Hunter's performance was deficient with regard to the check, as he did raise this issue at the sentencing hearing.

Second, for the reasons stated in more detail in Section II *infra*, Pira's *Brady* claims have no merit. Accordingly, it was not objectively unreasonable for Hunter to focus on sentencing issues on appeal, nor did it prejudice Pira.

8

Finally, Pira's claim that Hunter made an error when describing Pira's sentencing enhancements also fails the *Strickland* test because this error did not fall below an objective standard of reasonableness, nor did it prejudice Pira because there is no indication that the Court of Appeals relied on that statement in reaching its decision to dismiss Pira's appeal. Furthermore, in the event that the Seventh Circuit had been particularly concerned with that sentencing enhancement, it would likely have looked to the record to determined the sentence enhancements Pira received, rather than simply relying on Hunter's statement in the brief. Therefore, Pira fails to satisfy the *Strickland* test with respect to Hunter's representation, and is not entitled to habeas relief with respect to Count IV.

Because Pira has failed to establish that either Frankel or Hunter were ineffective under the *Strickland* test, Pira is not entitled to habeas relief under Counts I, IV or VI, to the extent that Count VI alleges a Sixth Amendment violation based upon ineffective assistance of counsel.

## II.     Counts II & III: *Brady* Violations

In Count II Pira alleges that the government committed a *Brady* violation by failing to turn over reports and recordings related to Pira's cooperation with the United States Secret Service. Count III alleges that the government withheld exculpatory evidence, which is also essentially a *Brady* violation claim. However, Pira's *Brady* claims are procedurally defaulted. Although Pira made these same arguments to the district court prior to and during his sentencing hearing, he failed to raise any discovery-related issue in connection with his appeal. A petition for habeas corpus pursuant to 28 U.S.C. § 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Therefore, a district court cannot address the merits of an appealable issue on a petition for relief under 28

U.S.C. § 2255 unless the issue was raised on direct appeal. *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996); *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). A petition can overcome procedural default only if he shows good cause for and prejudice from the failure to appeal. *Galbraith*, 313 F.3d at 1006; *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 205).

Pira cannot meet the cause and prejudice standard that would excuse his procedural default. Even assuming that Pira has made a showing of good cause because the motions he filed in the Seventh Circuit indicate that Pira wanted to raise the discovery-related issues on appeal, but his counsel declined to do so, he cannot show any prejudice from the failure to raise the *Brady* arguments on appeal.

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), a prosecutor's suppression of exculpatory evidence violates a defendant's right to due process. *Id.* at 87. In order to obtain a new trial or vacate a plea based on an alleged *Brady* violation, a defendant must establish that ***the prosecution suppressed material evidence that was favorable to the defense***. *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994)(emphasis added); *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992). However, this analysis only applies if the defendant discovers, after trial, favorable information "known to the prosecution but ***unknown to the defense***." *United States v. Agurs*, 427 U.S. 97, 103 (1976)(emphasis added); *United States v. Romo*, 914 F.2d 889, 898 (7th Cir. 1990); *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984).

Pira's alleged *Brady* violation claims lack merit because they do not meet the standard articulated in *Brady*. Thus, Pira suffers no prejudice from not having raised such claims on direct appeal, and from them being procedurally defaulted now. First, a *Brady* violation cannot

be premised upon information known to the defendant prior to trial, and Pira was fully aware of his cooperation prior to trial. *See, e.g. Romo*, 914 F.2d at 898 (stating that the *Brady* analysis assumes that evidence is discovered after trial that was known to the prosecution prior to trial, but not known to the defense)(quoting *Navarro*, 737 F.2d at 631); *see also Allen v. Lee*, 366 F.3d 319, 324-25 (4th Cir. 2004). At the change of plea hearing that occurred on what was scheduled as the second day of the trial, Frankel explicitly acknowledged his awareness of Pira's cooperation with the Secret Service, and that he intended to raise the issue at his sentencing hearing. Additionally, obviously Pira would be aware of his own cooperation, as he personally participated in the meetings and controlled transactions with the Secret Service. Although Pira claims that, even though he was aware of his own cooperation, he was not aware that recordings of his cooperation were made, Agent Bush's affidavit explicitly states that the substance of all recorded transactions were disclosed to Pira's counsel prior to trial. Bush affidavit ¶ 15. Furthermore, to the extent that Pira's claims regarding recordings refer to debriefings at the offices of the Secret Service, Agent Bush credibly testified that it is the policy of the Secret Service not to record interviews. Accordingly, Pira cannot state a *Brady* claim based upon evidence that does not exist. Transcript of Sentencing Hearing at 8-11 (July 19, 2006).

Second, Pira fails to demonstrate that the government attempted to suppress evidence or prevented him from obtaining records relating to his cooperation. Agent Bush's affidavit states that the government provided Frankel with all of the reports detailing Pira's cooperation with the Secret Service prior to trial and that the reports described the information provided by Pira as well as detailed the controlled transactions in which Pira participated. Bush affidavit ¶ 15. Additionally, the fact that actual copies of the recordings from Pira's controlled transactions

were not provided to Frankel prior to trial does not constitute suppression of evidence by the government because the existence and nature of these recordings were detailed in the reports provided to Frankel. *Id.*

Because Pira's alleged *Brady* claims do not meet the standard to obtain a new trial or vacate his plea articulated in *Brady*, there is no prejudice to Pira from the failure to raise the *Brady* issue on appeal. Therefore, Pira's *Brady* claims are procedurally defaulted and he is not entitled to habeas relief under Counts II and III.

### III. Count V: Claim Against the Seventh Circuit

In Count V Pira alleges that the Seventh Circuit violated his right to counsel by denying his motions to discharge Hunter as well as his motion to file a supplemental brief *pro se* in support of his appeal. However, the Sixth Amendment right to self-representation does not extend to an appeal. *Martinez v. Court of Appeal*, 528 U.S. 152, 160 (2000); *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003). Therefore, the Seventh Circuit was not required to allow Pira to represent himself or file his own brief. Accordingly, Pira is not entitled to habeas relief under Count V.

### IV. Count VI: Fourth and Fifth Amendment Violations

Count VI alleges: 1) Pira's Fourth Amendment rights were violated in the obtaining and execution of the search warrant, 2) Pira's Fifth Amendment rights were violated by the deprivation of his liberty, and 3) Pira's Sixth Amendment rights were violated by the ineffectiveness of Frankel and Hunter. With respect to Pira's claims regarding a Sixth Amendment violation, this claim has already been discussed and denied in Section I *supra*. We also deny habeas relief to Pira based on his claims of Fourth and Fifth Amendment violations.

Pira provides no explanation in his initial petition of how the execution of the search warrant violated his Fourth Amendment rights or how his Fifth Amendment rights were violated. Although Pira attempts to expand upon these alleged violations in his reply brief, Pira never made a Fourth or Fifth Amendment claim before now to this court or the Appellate Court, and has not demonstrated cause or prejudice for his failure to do so. Accordingly, these claims are procedurally defaulted. *See Gailbraith*, 313 F.3d at 1001. Pira is not entitled to habeas relief for the claims asserted in Count VI.

## CONCLUSION

For the foregoing reasons, petitioner Yousif Pira's petition [1] to correct his sentence pursuant to 28 U.S.C. § 2255 is denied. This is a final and appealable order and this case is hereby terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: April 23, 2009